IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Margaret Ann Blocker, ) | Civil Action No. 2:10-332-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **O R D E R** |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

In accordance with the provisions of 28 U.S.C. 636(c); Fed. R. Civ. P. 73; and D.S.C. Local Rule 73.02(B)(1) the parties in this case have consented to have a United States Magistrate Judge conduct all proceedings in this case. Based upon this consent, the case was referred to the undersigned for final disposition by Order of the Honorable Terry L. Wooten, United States District Judge, filed February 12, 2010.

The plaintiff, Margaret Ann Blocker, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 36 years old at the time she applied for SSI and 38 years old as of the date of the Administrative Law Judge's (ALJ) decision. (R. at 28, 114.) The plaintiff alleges she has been disabled since July 26, 2007,[1] due to human immunodeficiency virus (HIV), congestive heart failure, nonischemic dilated cardiomyopathy, and hypertension. (R. at 182, 193.) It appears she attended the twelfth grade, but received a certificate of attendance, not a diploma. (R. at 30, 187.) She has past relevant work as a fast food

---

[1] Plaintiff amended her alleged onset date in her Pre-Hearing Brief dated June 4, 2009. (R. at 212.) In initial filings, she alleged an onset date of July 31, 2002. (R. at 114.)

worker, waitress, housekeeper and meat packer. (R. at 118-24, 138-39, 144-51, 183-84, 204, 211.)

The plaintiff filed applications for SSI on July 31, 2007. (R. at 114-16.)[2] Her application was denied in initial and reconsidered determinations. (R. at 63-66, 72-79.) After a hearing on June 22, 2009 (R. at 23-58), an ALJ issued an unfavorable decision in which he found that the plaintiff was not disabled. (R. at 8-22.) As the Appeals Council denied the plaintiff's request for review (R. at 1-4), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)   The claimant has not engaged in substantial gainful activity since July 31, 2007, the application date (20 CFR 416.971 *et seq.*).
>
> (2)   The claimant has the following severe combination of impairments: non-ishemic dilated cardiomyopathy, status post placement of dual chamber defibrillator, and congestive heart failure (20 CFR 416.920(c)).
>
> (3)   The claimant does not have an impairment or combination of impairments that meets or medically equals Listing 4.02 or any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).
>
> (4)   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except with restrictions which require no lifting or carrying over 10 pounds occasionally and less than 10 pounds frequently; no standing and/or walking over 2 hours in an 8-hour workday; only occasional stooping, crouching, kneeling, crawling, balancing, climbing of stairs or ramps or climbing of ladders or scaffolds; avoidance of hazards such as unprotected heights, vibration and dangerous machinery; and, a work environment which is reasonably free from cold temperature. In addition, due to an

---

[2] The plaintiff previously filed an application for SSA in October 1997. She subsequently filed applications for SSI and DIB in January, 2004, and for SSI in March 2006. All of these applications were denied in initial determinations and the plaintiff did not pursue them further. (R. at 59-62, 67-71.)

>    implanted defibrillator requires staying away from machines or other things that generate electrical or magnetic fields.
>
>    (5)   The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
>    (6)   The claimant was born on December 16, 1970 and was 36 years old, which is defined as a younger individual age 18-44, on the date the application was filed. (20 CFR 416.963).
>
>    (7)   The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
>    (8)   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>    (9)   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).
>
>    (10)  The claimant has not been under a disability, as defined in the Social Security Act, since July 31, 2007, the date the application was filed (20 CFR 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

>    the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential

questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v.*

*Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966).  Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find her disabled.  Specifically, the plaintiff alleges that the ALJ erred in (1) not finding her subjective complaints credible and (2) failing to give the opinion of her treating physician controlling weight.  The Court will address each alleged error in turn.

**I.    Plaintiff's Credibility**

The plaintiff first contends that the ALJ improperly discounted her testimony.  The plaintiff, however, does not contest any specific reason of the ALJ (see R. at 19-20) for his conclusion in this regard.  For that failure alone, the Court has no basis for remanding or reversing the decision.  Notwithstanding, the Court would say a little more.

Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations.  *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996).  Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process."  *Id.* at 594. First, "there must be objective medical evidence showing the existence of a medical

5

impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id.* at 596.

In contrast to the plaintiff's showing, the defendant has offered significant evidence of record in the ALJ's defense. Specifically, the ALJ found that the objective medical evidence did not support the plaintiff's subjective complaints. (R. at 19-21.) This is an appropriate consideration. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. § 416.929(c); SSR 96-7p. The ALJ expressly emphasized various medical evidence, including the records of Dr. Mihai Croitoru. (R. at 432-36, 439-42, 445-46, 463-64, 466-68, 597, 607-08, 706-07, 722-26, 742-43, 755-58, 868-76.) Other evidence of record was inconsistent with the degree of symptomology and limitation alleged by the plaintiff. (R. at 635-38, 739-41, 734, 877, 881, 883, 885.)

The ALJ further found that the plaintiff's non-compliance with prescribed treatment also undermined the credibility of her subjective complaints. (R. at 15-16.) Failure to follow treatment may be considered in evaluating a claimant's credibility. *See English v. Shalala*, 10 F.3d 1080, 1084 (4th Cir. 1993). In December 2007, her defibrillator fired several times after, among other things, she stopped taking her medications. (R. at 615-17, 619, 621-24, 626, 724-26.) Likewise, the ALJ noted a gap in treatment for her cardiac condition was inconsistent with her complaints of disabling functional limitations. (R. at 20.) It appears from the record that Dr. Croitoru did not examine the plaintiff for her cardiac condition between May 2008 and April 2009. (R. at 20, 755-58, 868-76); s*ee Mickles v. Shalala*, 29

F.3d 918, 921 (4th Cir. 1994) (Failure to seek medical treatment may support a finding that a claimant's impairments are not of disabling severity).

The ALJ also found that the plaintiff's activities of daily living also undermined her subjective complaints that her symptoms were so severe as to be disabling. (R. at 15-16, 20.) In March 2008, the plaintiff told Mr. Kenneth Murphy, a physician's assistant, that she had been "fairly busy working around the house" on the previous day, including sweeping, mopping, and cleaning. (R. at 739-41.) At the hearing, the plaintiff testified she went grocery shopping, prepared meals daily, washed dishes, and took out the trash. (R. at 32-34, 44-45, 52-53). *See Johnson*, 434 F.3d at 658 (accepting ALJ's finding that claimant's activities were inconsistent with complaints of incapacitating pain where she attended church, read, watched television, cleaned house, washed clothes, visited relatives, fed pets, cooked, managed finances, and performed stretching exercises); *Mickles*, 29 F.3d at 921 ("The only fair manner to weigh a subjective complaint is to examine how the pain affects the routine of life"); *see Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (affirming finding of no disability where claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town each day). A community long-term care case note, on January 9, 2009, indicated that the plaintiff was independent with transfer, locomotion, bathing, toileting, dressing, and eating. (R. at 814). Another case note from January 22, 2009 stated she could meet all of her personal care needs with respect to activities of daily living. (R. at 813.) *See, e.g., Mickles*, 29 F.3d at 921 (inconsistencies supported a finding that plaintiff's testimony was not credible).

All of this evidence, taken together, is substantial. As stated, the plaintiff has contested none of it, either in the first instance or in reply.

**II.     Treating Physician**

The plaintiff also contends that the ALJ failed to give the opinion of her treating physician, Dr. Croitoru, controlling weight. In September 2008, Dr. Croitoru stated that the plaintiff's congestive heart failure was "disabling." He found that even limited physical

7

activity would aggravate her condition, she was "unable to perform substantial gainful activity," and that her "disability [was] permanent." (R. at 759-63.) Dr. Croituro stated that the plaintiff did not have the stamina to stand/walk for six to eight hours per day, could only lift and carry less than ten pounds, and could never push/pull, climb, or perform overhead work. (R. at 862-67.) In December 2008, he again stated that the plaintiff did not have strength or stamina to stand/sit for six to eight hours per day, could not sustain gainful employment, and was disabled. (R. at 775.) In January 2009, Dr. Croituro stated that the plaintiff was "unable to work" and it was "unknown if or when she would be able to return to a work situation." (R. at 861.)

The ALJ expressly considered Dr. Croitoru's opinions but assigned them little weight, as he found them not supported by the doctor's own treatment records. (R. at 20.) Again, aside from her generalized characterization that the record somehow "overwhelming" supports Dr. Croitoru's opinion, the plaintiff has not made any specific objection to the ALJ's reasoning.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *See Blalock*, 483 F.2d at 775.

The ALJ found that Dr. Croitoru's treatment notes did not reflect or support the stringent limitations he ultimately assigned in September 2008, December 2008, and January 2009. (R. at 20). The only previously identified and specific functional limitations Dr. Croitoru had imposed were noted during office visits in November 2007 and May 2008. In November 2007, he recommended no lifting, pushing, pulling, extending, or abducting of the left upper extremity for 14 days. (R. at 436, 464.) In May 2008, Dr. Croitoru stated she "w[ould] not be able to perform any kind of physical labor." (R. at 755-58.)

The ALJ emphasized, however, that Dr. Croitoru did not see the plaintiff until nearly a year later and at that time found her feeling "generally well." (R. at 20.) Specifically, Dr. Croitoru noted that she reported no shortness of breath, cough, hemoptysis, or wheezing. (R. at 868-76.) She had no chest pain, pressure, discomfort, palpitations, tachyarrhythmias, orthopnea, dyspnea, cyanosis, coldness, or edema. Dr. Croitoru found her internal cardiac defibrillator incision site was healing well with no excess drainage, erythema, increased warmth, swelling, or tenderness. *Id.* She had normal muscle strength and tone with no atrophy or abnormal movements and Dr. Croitoru assigned her a NYHA functional classification of I, which the defendant represents, without dispute, means she had no symptoms and no limitation with ordinary physical activity. *Id.* at 870. Such colorable inconsistencies constitute a reasonable basis to discount the physician's opinion. *See Choate v. Barnhart*, 457 F.3d 865, 870 (8th Cir. 2006) (holding that the ALJ was permitted to disregard a treating physician's opinion regarding plaintiff's limitations, when no limitations were stated in the physician's treatment notes). The plaintiff has not contested them.

The ALJ also reiterated the well-established rule that Dr. Croitoru's conclusory statements that the plaintiff was "disabled" and "unable to work" were not controlling. (R. at 20); *see* 20 C.F.R. § 416.927(e)(2); SSR 96-5p.

The plaintiff has not actually explained how the ALJ's rationale was in error. There is no basis for remand, accordingly. Any other generalized complaints concerning the ALJ's consideration of treating physician opinions has not been seriously argued or effectively

supported by the plaintiff and would not change the view of this Court that a remand is not in order.

## **CONCLUSION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and it is ORDERED that the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

                                                s/Bruce H. Hendricks
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

April 15, 2011
Greenville, South Carolina